**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PHILADELPHIA PROFESSIONAL COLLECTIONS, LLC,        Plaintiff,              v.    ROBERT O. YOUNG, SHELLY R. YOUNG, and HIKARI HOLDINGS LLC,        Defendants. | CIVIL ACTION NO. 10-cv-00724 |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                                                              **December 22, 2010**

Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction,
Improper Venue, Failure to State a Claim, and Failure to Join a Party Under Rule 19, pursuant to
Rules 12(b)(2), 12(b)(3), 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure.  For the
reasons that follow, Defendants' Motion is denied.[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In January 2010, Plaintiff Philadelphia Professional Collections LLC ("PPC"), a limited
liability company with its principal place of business in Philadelphia, Pennsylvania, filed

---

[1]  Weighing in at a scant ten pages and nearly devoid of legal authority supporting its four
asserted bases for dismissal, Defendants' moving papers are both deficient and lacking in lucidity.
Despite Local Rule 7.1(c), Defendants *declined* to file a brief containing legal argument and the authority
on which they relied [doc. no. 4-3], instead only sparsely sprinkling case citation and argument amid the
factual contentions of their motion.  The meager authority Defendants chose to cite was irrelevant or
otherwise unhelpful in clarifying the legal issues.  While brevity is welcome, it should not come at the
expense of clarity and compliance with this Court's rules.  Failure to so comply may result in denial of
future motions without the Court reaching the merits.  See S.E.C. v. Going Platinum, Inc., No. 03-cv-
04191, 2004 WL 2203716, at *1 n.1 (E.D. Pa. Sept. 23, 2004).

common law claims for unjust enrichment, breach of contract and quantum meruit against Robert O. and Shelley R. Young and Hikari Holdings, LLC (collectively "Defendants") in the Court of Common Pleas in Philadelphia County, Pennsylvania seeking recovery of $132,691.59 in unpaid legal fees.[2]  PPC is "engaged in the business of collecting accounts receivable and other claims of professional organizations . . . ."[3]  Robert and Shelley Young ("the Youngs") are residents of Valley Center, California, and Hikari Holdings LLC ("Hikari") is a Utah limited liability company with its principal place of business in Valley Center, California.[4]  Defendants timely removed the action to this Court pursuant to 28 U.S.C. §§ 1332(a) and 1441(a) [doc. no. 1].[5]  On April 7, 2010, Defendants filed the pending motion to dismiss for lack of personal jurisdiction, improper venue, failure to state a claim, and failure to join a party under Rule 19 [doc. no. 4].

PPC's claims stem from Defendants' failure to pay the law firm White and Williams LLP ("W&W") for legal services rendered in the defense of the Youngs in an unrelated dispute filed against them by Darius International, Inc. and others in the Eastern District of Pennsylvania.[6]  In December 2005, Michael N. Onufrak, an attorney with W&W's Philadelphia office, sent an

---

[2]  Compl. [doc. no. 1-4] ¶¶ 1–3, 6–8, 10–17; Defs.' Mot. to Dismiss Compl. ("Mot. Dismiss") ¶ 4.

[3]  Compl. Ex. C ("Assignment Agreement") ¶ B.

[4]  Id. ¶¶ 2–3; Mot. Dismiss ¶ 5.

[5]  This Court has diversity jurisdiction over this matter because all Defendants are diverse from PPC and the amount in controversy here far exceeds $75,000.  See 28 U.S.C. § 1332(a).

[6]  Though the Engagement Agreement between Defendants and W&W references litigation then-pending in the Court of Common Pleas, Compl. ¶ 6 & Ex. A ("Engagement Agreement"), the memorandum opinion from the prior litigation was issued by a court in this District.  See generally Pl.'s Resp. to Defs.' Mot. Dismiss ("Pl.'s Resp.") Ex. B (Darius Int'l, Inc. v. Young, No. 05-6184, 2006 WL 1071655 (E.D. Pa. Apr. 20, 2006)) [doc. no. 5-1].  Because W&W attorneys are identified as counsel of record by that opinion, the Court presumes the matter proceeded in the Eastern District of Pennsylvania.

engagement letter ("Engagement Agreement") to the Youngs, Hikari and non-party Mana LLC in care of their then-counsel Douglas Thayer at his Provo, Utah, office address.[7]  The Engagement Agreement was printed on W&W letterhead bearing the address of only the firm's Philadelphia office and set out the terms of an agreement under which W&W would serve as local counsel for Defendants in the matter filed against them in Philadelphia and assist with legal strategy.[8]  The Agreement stated W&W's rates and other terms of the representation, informed defendants that Mr. Onufrak would be the primary attorney in charge of the litigation, requested an initial retainer of $10,000, and noted W&W would bill Defendants monthly thereafter with the bills payable upon receipt.[9]  Onufrak noted that W&W looked "forward to serving [Defendants] on an ongoing basis."[10]  Finally, the letter requested that either Thayer or Defendants were to "sign a copy of this letter and return it . . . along with the $10,000 retainer."[11]  On December 7, 2005, the Defendants, not Thayer, signed the letter.[12]

The relationship between W&W and Defendants apparently ran smoothly for nearly two years, with Defendants paying W&W's legal fees from January 2006 to about September 2007.[13]

_____

[7]  See generally Engagement Agreement.

[8]  Id. at 1–3.  The letter noted that W&W would be responsible for "knowledge of the local rules, practical advice, covering the upcoming status conference, etc.," but acknowledged that the "role may change as the case progresses."  Id. at 3.  W&W conducted at least some substantive legal work, such as investigating service issues.  Id.

[9]  Id. at 2, 3.

[10]  Id. at 3.

[11]  Id.

[12]  See id.  Defendants admit to signing the Engagement Agreement.  Mot. Dismiss ¶ 7.

[13]  Compl. ¶ 8 & Ex. B ("Collections Acct. Detail").  Defendants aver that they paid "tremendous sums" to W&W, but do not identify the amount of fees they paid.  Mot. Dismiss ¶ 5.

W&W's fees and costs apparently totaled more than $492,000 over the course of the representation.[14]  Beginning in about October 2007, Defendants stopped paying its bills, leaving a $132,631.59 balance unpaid.[15]  W&W sent its last invoice to Defendants in early 2009.[16]

On January 15, 2010, W&W assigned all of its rights and claims against Defendants to PPC.[17]  The Assignment Agreement, signed by Robert A. Kargen, the manager of PPC, and George Hartnett, a W&W partner, stated in relevant part:

> W&W hereby sells, assigns, transfers, and conveys unto PPC all of W&W's right, title, interest and ownership of any nature whatsoever, in, to, or under any Claims which W&W has or may have against Robert O. Young, Shelly R. Young, Hirkari Holdings, LLC, and Mana, LLC (the "Account Debtors").  Such Assignment is non-recourse to W&W.
>
> . . . .
>
> W&W represents and warrants that the total amount of accounts receivable due and owing by the Account Debtors to W&W as of January 2, 2010 is $132,691.59.[18]

Consequently, in February 2010, PPC filed this collection action.  White and Williams represents PPC in this action.

## II.    STANDARD OF REVIEW

Plaintiffs bear the burden of demonstrating personal jurisdiction over Defendants.[19]  If a

---

[14]  See Collections Acct. Detail.

[15]  Id.; Compl. ¶ 8.  It is unclear whether or for how long W&W's representation continued after Defendants stopped paying their legal fees.

[16]  Pl.'s Resp. at 1.

[17]  Compl. ¶ 9; Assignment Agreement.

[18]  Assignment Agreement ¶¶ 1–2.

[19]  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002)).

jurisdictional defense is raised and neither discovery nor an evidentiary hearing has been held, a plaintiff need make only a prima facie showing of personal jurisdiction.[20]  Courts must construe all disputed facts alleged in the light most favorable to the plaintiff.[21]  Plaintiffs cannot rely on general averments of jurisdiction in the complaint or unsupported statements in their response, but instead must provide jurisdictional facts supported by affidavits or competent evidence to sustain their burden.[22]  The jurisdictional burden is met "by establishing with reasonable particularity sufficient contacts between the defendant and the forum state."[23]

Whereas plaintiffs bear the burden of establishing personal jurisdiction, defendants bear the burden of showing improper venue[24] or the need for transfer.[25]  "In considering a motion to dismiss for improper venue . . . courts must generally accept as true the allegations in the Complaint, although the parties may submit affidavits in support of their positions."[26]  But the court draws "all reasonable inferences and resolve all factual conflicts in favor of the Plaintiff."[27]

In reviewing a Rule 12(b)(6) and 12(b)(7) motion to dismiss for failure to state a claim

---

[20]  See id.

[21]  Id.

[22]  Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).

[23]  Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (quotations omitted) (citing Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc., 819 F.2d 434 (3d Cir. 1987)).

[24]  Myers v. Am. Dental Ass'n, 695 F.2d 716, 724–25 (3d Cir. 1982).

[25]  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

[26]  Chester v. Beard, No. 07-4742, 2008 WL 2310946, at *5 (E.D. Pa. June 1, 2008) (quotations & citation omitted).

[27]  Id. (quotations and citation omitted).

upon which relief may be granted or failure to join a party required under Rule 19, the Court

must accept a plaintiff's factual allegations as true and draw all logical inferences in favor of the

non-moving party.[28]  Courts are not, however, bound to accept as true legal conclusions couched

as factual allegations.[29]  The Complaint must set forth direct or inferential allegations respecting

all the material elements necessary to sustain recovery under some viable legal theory.[30]  And the

plaintiff must allege "enough facts to state a claim for relief that is plausible on its face."[31]

     In considering a 12(b)(1) motion for lack of subject matter jurisdiction,[32] the Court must

first determine whether the jurisdictional attack is facial or factual.[33]  If the former, the Court

relies solely on the pleadings, assumes all allegations are true, and draws all reasonable

inferences in favor of the plaintiff.[34]  If the latter, the Court is "free to weigh the evidence and

satisfy itself as to the existence of its power to hear the case."[35]

---

[28]  ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (considering 12 (b)(6)); Kuhn Constr. Co. v. Ocean and Coastal Consultants, Inc., -- F. Supp. 2d --, 2010 WL 2787456, at *6 (D. Del. 2010) (considering 12(b)(7) standard) (citing Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 65 F. Appx. 803, 805 (3d Cir. 2003).

[29]  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 564 (2007).

[30]  See id. at 562 (citing Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (5th Cir. 1984).

[31]  Id. at 570.

[32]  As discussed *infra* part III.C, the Court construes Defendants' 12(b)(6) challenge as a challenge to standing, and thus to this Court's subject matter jurisdiction.

[33]  See Mortensen v. First Fed. Sav. & Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977).

[34]  Id.  A facial attack challenges the sufficiency of the pleadings and a factual attack challenges the court's jurisdiction in fact.  See id.

[35]  Id.

## III. DISCUSSION

### A.    Personal Jurisdiction

Federal courts in Pennsylvania may assert jurisdiction over a defendant to the extent that the defendant would be subject to jurisdiction in Pennsylvania state courts.[36]  Pennsylvania's long-arm statute permits the exercise of jurisdiction over non-resident defendants to the full extent permitted under the Due Process Clause of the United States Constitution.[37]  Therefore this Court need only evaluate whether the Constitutional requirements are satisfied.[38]

Defendants appear to argue this Court lacks jurisdiction over them because they "do not have contacts with . . . Pennsylvania," and they did not consent to jurisdiction in the Engagement Agreement.[39]  PPC counters that Defendants have sufficient contacts for general jurisdiction because they "maintained a website directed to Pennsylvania consumers and sell their phMiracle products through their interactive website" from which "customers . . . learn about and purchase the Young's products in Pennsylvania."[40]  Alternatively, PPC argues that the Court has specific jurisdiction because their claims arise from the Engagement Agreement between W&W, and Defendants specifically and purposefully retained Philadelphia attorneys and to represent them in

---

[36]  See Fed. R. Civ. P. 4(k)(1)(A); Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998).

[37]  Pennzoil Prods., 149 F.3d at 200 (citing 42 Pa. C.S.A. § 5322).

[38]  See id.

[39]  Mot. Dismiss ¶¶ 5 & 6.

[40]  Pl.'s Resp. at 4.

litigation occurring in this District.[41]  Finally, PPC argues that the four-year-old findings of the

court in <u>Darius International, Inc. v. Young</u>[42]—the matter in which W&W provided its legal

services to Defendants, and which was based on different claims against Defendants by different

plaintiffs—that Defendants are subject to jurisdiction in the Eastern District of Pennsylvania also

supports jurisdiction by this Court in this matter.[43]

### 1.      General Jurisdiction

To establish general jurisdiction—jurisdiction based on contacts with the state that are

*unrelated* to the cause of action—due process requires the plaintiff to demonstrate that the non-

resident defendant's contacts with Pennsylvania were "continuous and substantial."[44]  The

standard is demanding,[45] and PPC has not satisfied it here.  PPC's reliance on Defendants'

interactive website is unavailing for two reasons.  First, PPC has presented only a web address in

support of its assertions about Defendants' web-based contacts, rather than providing competent

evidence or affidavits with its responsive papers regarding the nature of the website.[46]  This is

insufficient to meet its burden of production.  Second, without more, even competent evidence of

---

[41]  <u>Id.</u> at 4–5.  PPC also asserts that the contract was formulated in Pennsylvania, but provides no affidavit or other evidence to support that contention.  Accordingly, the Court does not consider it.  <u>Time Share,</u> 735 F.2d at 66 n.9 (once a jurisdictional defense has been raised, plaintiffs must provide jurisdictional facts supported by affidavits or competent evidence to sustain their burden).

[42]  No. 05-6184, 2006 WL 1071655 (E.D. Pa. Apr. 20, 2006).

[43]  Pl.'s Resp. at 5 (citing Ex. B (<u>Darius,</u> 2006 WL 1071655 at *19)).

[44]  <u>Pennzoil Prods.,</u> 149 F.3d at 200 (citations omitted).

[45]  <u>Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.</u>, 64 F. Supp. 2d 448, 451 (E.D. Pa. 1999) ("The Third Circuit and its district courts have typically required a very high showing before exercising general jurisdiction . . . .").

[46]  Pl.'s Resp. at 4.

an interactive, commercial website accessible in this state is insufficient to confer general jurisdiction over the site operator.[47]  Though the greater the interactivity and commercial nature of the exchange of information via the site, the more likely it is that jurisdiction is proper,[48]  "the advent of the Internet did not alter the Third Circuit's requirement that the plaintiff make a very high showing before a court exercises general jurisdiction over a non-resident defendant."[49]  Consequently, to be sufficient for general jurisdiction, an interactive website must either be targeted specifically to Pennsylvanians or central to the defendant's business in Pennsylvania.[50]  PPC has neither argued nor presented evidence suggesting Defendants' website targeted Pennsylvania residents or was somehow central to their business.  And the jurisdictional contacts considered by the <u>Darius</u> court in 2006, even if sufficient for general jurisdiction there, cannot sustain a finding of general jurisdiction here. Only contacts occurring within a reasonable period of time prior to the filing of this action are relevant to this Court's general jurisdiction inquiry.[51]

---

[47] <u>Stinnett v. Atl. City Showboat, Inc.</u>, No. 07-4743, 2008 WL 1924125, at *3–4 (E.D. Pa. Apr. 25, 2008).

[48] <u>See Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119, 1124–25 (W.D. Pa. 1997).

[49] <u>Snyder v. Dolphin Encounters Ltd.</u>, 235 F. Supp. 2d 433, 439 (E.D. Pa. 2002) (citation & quotations omitted).

[50] <u>In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.</u>, -- F. Supp. 2d --, 2010 WL 3222019, at *34 (W.D. Pa. 2010); <u>Stinnett</u>, 2008 WL 1924125 at *4.

[51] <u>See, e.g.</u>, <u>Johnson v. Woodcock</u>, 444 F.3d 953, 955 (8th Cir. 2006) (relevant jurisdictional contacts are those that "exist either at the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit") (citation & quotations omitted); <u>A.S.T., LLC v. Carvin Pallenberg</u>, No. 07-795, 2008 WL 2074010, at *3 (D.N.J. May 15, 2008) ("[P]ersonal jurisdiction depends on the defendant's contacts with the state at the time the lawsuit was filed.") (quotations & citations omitted); <u>Saudi v. Acomarit Maritimes Servs. S.A.D.</u>, No. 01-4301, 2002 WL 1373077, at *1 (E.D. Pa. June 24, 2002) (contacts well before incident giving rise to the claim not relevant to general jurisdiction).

Notably the <u>Darius</u> court did not reach the question of whether Defendants' website and their

The contacts considered by the <u>Darius</u> court appear to have occurred during the earlier years of this decade,[52] far too remote in time from the filing of this action for the Court to consider them.

## 2. Specific Jurisdiction

Specific jurisdiction exists where the plaintiff's claim is "related to or arises out of the defendant's contacts with the forum," and the defendant has constitutionally sufficient minimum contacts with the forum state.[53] Minimum contacts demand "some act by which the defendant purposely avail[ed] itself of the privilege of conducting business within the forum State, thus invoking the protection and benefits of its laws," such that the Defendant should reasonably anticipate being haled into court in that state.[54] Depending on its nature and quality, a single act may be sufficient for specific jurisdiction "[s]o long as it creates a substantial connection with the forum."[55] The Court should also determine that exercising jurisdiction "comport[s] with fair play and substantial justice."[56] Factors relevant to that inquiry include:

> [T]he burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.[57]

---

three visits to this state were sufficient for general jurisdiction. <u>Darius</u>, 2006 WL 1071655 at *19.

[52] See Darius, 2006 WL 1071655 at *19.

[53] <u>Pennzoil</u>, 149 F.3d at 201.

[54] <u>Id.</u> at 201, 203 (quotations & citation omitted) (alteration in original).

[55] <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476 n.18 (1985).

[56] <u>Id.</u> at 476.

[57] <u>Pennzoil</u>, 149 F.3d at 205–06 (citation & quotations omitted).

"To defeat jurisdiction based on this fairness inquiry, a defendant must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"[58]

PPC has, however, made a prima facie showing of specific jurisdiction over all Defendants for each claim.[59] First, there can be little doubt that PPC's claims "arise out of or relate to" Defendants' contacts with this District. To satisfy that requirement, the contacts must have been more than the but-for cause of the injury, but need not rise to the level of proximate cause.[60] Instead, a reciprocity principle governs: the nature of the contact must have been such that the defendant could reasonably have expected to enjoy the benefits of the forum's laws and thus be subject to its obligations.[61] "In contract cases, the Third Circuit has typically required 'substantial relevance,' specifically, 'whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach.'"[62] Here, Defendants' attorney, acting on their behalf, had prior phone conversations with W&W's Onufrak regarding the

---

[58] Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (quoting Burger King, 471 U.S. at 476)).

[59] Though specific jurisdiction must ordinarily be analyzed claim-by-claim, it is not "necessary to do so in all multiple claim cases." Remick v. Manfredy, 238 F.3d 248, 255–56 (3d Cir. 2001). Here, PPC's claims for breach of contract, unjust enrichment, and quantum meruit all factually overlap: each is based on W&W's provision of legal services in this state and on Defendants alleged failure to fully pay for those services. Accordingly, it is unnecessary to conduct a separate jurisdictional inquiry as to each claim. Cf. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 318 n.3 (3d Cir. 2007) (loss of consortium claim factually overlaps with, and is derivative of, negligence claim and does not require separate analysis); CDV Mgmt., LP v. Integrated Airline Servs., No. 04-4173, 2005 WL 230630, at *1, 4–5 (E.D. Pa. Jan. 31, 2005) (analyzing specific jurisdiction for breach and unjust enrichment claims together).

[60] O'Connor, 496 F.3d at 323.

[61] Id.

[62] Pulte Home Corp. v. Del. Land Assocs., L.P., No. 08-311, 2008 WL 2168788, at *4 (E.D. Pa. May 22, 2008) (quoting O'Connor, 496 F.3d at 320 and Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)).

relationship,[63] Defendants entered into a contract with a Pennsylvania law firm for services to be rendered here and sent the executed Engagement Agreement to W&W's Philadelphia Offices.[64] These contacts are not only instrumental in the formation of the contract and the breach,[65] but they also satisfy this Circuit's reciprocity principle: by entering into a contract to be performed in Pennsylvania, Defendants could reasonably have expected to enjoy the state's protections and be subject to its obligations. Accordingly, the breach of contract and other claims arise from or are related to Defendants' contacts with this District.

Second, Defendants have sufficient minimum contacts that demonstrate they purposefully availed themselves of the protections of this forum. A contractual relationship with a forum resident does not, alone, establish the requisite contacts for specific jurisdiction.[66] Courts should consider the contracting parties' prior negotiations, contemplated future consequences, terms of the contract and actual course of dealing.[67] Physical presence in the forum is not required.[68]

---

[63] Engagement Agreement at 1 (noting W&W was following up on phone conversations with Defendants' attorney Doug Thayer).

The forum contacts of an agent, such as an attorney acting on behalf of his client, In re Kensington Int'l, Ltd., 368 F.3d 289, 315 (3d Cir. 2004), may be imputed to the principal, for purposes of jurisdiction, see, e.g., Grand Entm't Grp. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993); FROF, Inc. v. Harris, No. 87-2384, 1988 WL 122315, at *3 (E.D. Pa. Nov. 10, 1988).

[64] Engagement Agreement at 3 (directing Defendants to return the signed contract and $10,000 retainer fee to Onufrak).

[65] Cf. Bank Express Int'l v. Kang, 265 F. Supp. 2d 497, 503–04 (E.D. Pa. 2003) (breach claim related to contacts where terms of agreement directed data be submitted to Pennsylvania firm and breach occurred when submissions ended).

[66] Burger King, 471 U.S. at 478.

[67] Id. at 479; see also Remick, 238 F.3d at 256.

[68] Remick, 238 F.3d at 257.

And when a defendant creates continuing obligations with the residents of the forum, it is presumptively not unreasonable for the defendant to submit to the burdens of litigation in that forum.[69]

Consideration of these factors support a finding of minimum contacts here. First, the Engagement Letter references multiple communications between W&W's Onufrak and Defendants' attorney prior to the execution of the Engagement Agreement. Second, all of the Defendants signed the Agreement for legal services to be performed in Pennsylvania, with the files associated therewith maintained in this state.[70] The executed agreement was returned to W&W in Pennsylvania either by Defendants themselves or by their agent. Third, Defendants knew or should have known that the work would be performed in Pennsylvania by Pennsylvania attorneys since the Agreement was printed on W&W's letterhead, which included only its Philadelphia address and stated the W&W would serve as local counsel for litigation pending in Philadelphia. Fourth, the Agreement directly anticipated a long-term contractual agreement with W&W, noting that W&W "look[ed] forward to serving [Thayer] and [Defendants] on an ongoing basis." Finally, in addition to Defendants' payment of the initial $10,000 retainer fee, for nearly two years, Defendants sent regular, monthly payments to W&W for the legal services performed by the firm totaling approximately $360,000.[71] Defendants contacts with this state and its purposeful entry into an ongoing contractual relationship that created continuing obligations with

---

[69] Burger King, 471 U.S. at 476.

[70] Engagement Agreement at 3 (signatures of Robert and Shelly Young and Hikari representative).

[71] Pl.'s Resp. at 1; Collections Acct. Detail (detailing monthly invoices and payments from defendants by check number); Mot. Dismiss ¶ 5 (noting the "tremendous sums" already paid by Defendants to W&W).

a citizen of this state are together sufficient for this Court to exercise jurisdiction over each

Defendant consistent with due process.[72]

Exercising jurisdiction also comports with fair play and substantial justice. Defendants

did not submit any evidence demonstrating that the assertion of jurisdiction would be

unreasonably burdensome. They argue only that "it would be highly inconvenient and unfair" to

require litigation here, "especially where there are substantive reasons for nonpayment of the

invoices relating to the legal services rendered and the amounts charged," and that they would be

prejudiced by having to litigate against Pennsylvania attorneys regarding legal matters previously

pending before Pennsylvania courts.[73] Defendants do not explain why their substantive defenses

render jurisdiction burdensome given much of the evidence and many of the witnesses are likely

to be found here, where the representation occurred. And PPC has an interest in obtaining

---

[72] See, e.g., Remick, 238 F.3d at 256–57 (specific jurisdiction in contract dispute where fee agreement was returned to Pennsylvania, at least one payment was made to the Pennsylvania office, legal services were performed in Pennsylvania, and informal communications occurred during the course of the relationship); English & Smith v. Metzger, 901 F.2d 36, 39–40 (4th Cir. 1990) (specific jurisdiction in contract dispute where Defendant initiated contact, entered into contract for legal services to be provided in the forum and carried on continuing relationship throughout the litigation); T.R. Palm Inv. LP v. Corvese, No. 02-1767, 2002 WL 32349877, at *2–5 (E.D. Pa. Oct. 1, 2002) (specific jurisdiction in contract dispute where agreement included ongoing payment obligations to Pennsylvania entity for work performed in Pennsylvania; contract included Pennsylvania choice of law clause; negotiation of the agreement took place via unspecified number of phone calls, faxes and mail; partial payments were made under the contract, and purpose of the contract was to assist defendant); Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, 245 F. Supp. 2d 1248, 1257–58 (N.D. Ga. 2002) (specific jurisdiction in contract dispute where defendants initiated relationship with forum law firm, knew that legal work would be conducted in forum and all legal files would be located there, sent regular payments and had other communications to the in-forum firm); FROF, 1988 WL 122315 at *3–4 (specific jurisdiction in contract dispute where defendant's attorney negotiated and contracted for legal services to be provided in Pennsylvania on defendant's behalf).

Although it is unclear who initiated contact between Defendants and W&W, that is not significant here because the Defendant intended to "establish a common venture extending over a substantial period of time." Gen. Elec. Co., 270 F.3d at 150–51.

[73] Mot. Dismiss ¶ 5, 11.

"convenient and effective relief, and Pennsylvania has an interest in providing redress for a contractual breach inflicted on its citizen[s]."[74] Thus, execising jurisdiction over Defendants comports with fair play and substantial justice.

## B.     Venue

Defendants also seek dismissal on grounds of improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.  For cases founded on diversity jurisdiction, 28 U.S.C. § 1391(a) provides that venue is properly laid in either:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.[75]

Despite their motion to dismiss under Rule 12(b)(3), Defendants neither argue nor provide facts or legal authority that demonstrate that venue is improperly laid in the Eastern District of Pennsylvania under Section 1391, as is their burden in this Circuit.[76]  Defendants assert only that venue in the Eastern District of Pennsylvania is "highly inconvenient and unfair" to Defendants.[77]  That circular argument cannot sustain Defendant's burden because concerns of unfairness and inconvenience are addressed when the requirements of the venue statute are

---

[74] Specialty Ring Prods., Inc. v. MHF, Inc., No. 01-2683, 2001 WL 1466152, at *4 (E.D. Pa. Nov. 15, 2001).

[75] Manning v. Flannery, No. 09-03190, 2010 WL 55295, at *4 (E.D. Pa. Jan. 6, 2010) (citing 28 U.S.C. § 1391(a)).

[76] Myers, 695 F.2d at 724–25 (moving party bears burden of demonstrating improper venue).

[77] Mot. Dismiss ¶ 5.

satisfied,[78] and Defendants fail to argue they are not met here.[79]  Accordingly, the Court finds that

venue is properly laid in this District.

Defendants do assert, however, that the Southern District of California is the proper

venue because the contract was executed there, and litigating there is preferable because

California law will govern the interpretation of the contract.[80]  The Court infers that Defendants'

are seeking permissive transfer under 28 U.S.C. § 1404.  Section 1404 provides that even if

venue is properly laid in the forum district, "for the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought."  Though a district court has substantial discretion to grant a

motion for transfer, a "plaintiff's choice of venue should not be lightly disturbed."[81]

In evaluating the propriety of transfer,[82] courts consider "whether on balance the litigation

would more conveniently proceed and the interests of justice be better served by transfer to a

---

[78]  See Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994).

[79]  Nor could Defendants credibly argue improper venue.  In breach of contract actions, "venue ordinarily will lie [in the district] where the contract was to be performed."  Waste Mgmt. of Pa., Inc. v. Pollution Control Fin. Auth. of Camden County, No. 96-1683, 1997 WL 22575, at *1 (E.D. Pa. Jan. 21, 1997).  This District was the place of performance of the legal services at issue, and thus venue is properly laid here.  See Levin, Fishbein, Sedran & Berman v. Jameson, No. 09-3936, 2009 WL 4857434, at *4 (E.D. Pa. Dec. 14, 2009).

[80]  Mot. Dismiss ¶¶ 8–12.

[81]  Jumara, 55 F.3d at 879 (3d Cir. 1995) (citation & quotations omitted).

[82]  Before determining whether transfer is appropriate, however, the Court must first determine whether the putative transferee court is the proper venue and has personal jurisdiction over the Defendants.  Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970).  Here, there is no dispute that the Youngs reside, and Hikari has its principle place of business, in Valley Center, California.  Compl. ¶¶ 2–3; Mot. Dismiss ¶ 5.  Accordingly, the Southern District of California would have personal jurisdiction over each, and venue would be proper because all Defendants reside in that district.  See 28 U.S.C. §§ 1391(a)(1), (c).

-16-

different forum."[83]  Private interests considered include: (1) the plaintiff's choice of forum; (2)

the defendant's preference; (3) where the claim arose; (4) the convenience of the parties based on

their "physical and financial condition;" (5) the extent to which witnesses may actually be

unavailable for trial in the forum; and (6) the extent to which relevant books and records could

not be produced in another forum.[84]  Public interests considered include: (1) the degree to which

judgment may be enforced; (2) "practical considerations that could make the trial easy,

expeditious, or inexpensive;" (3) court congestion in the competing forums; (4) the forum's

"interest in deciding local controversies at home;" (5) public policy of the competing forum; and

(6) in diversity cases, the trial judge's familiarity with relevant state law.[85]

       Here, the private and public interests weigh in favor of maintaining venue in this District.

As for the private interests, PPC and the Defendants each understandably prefer to litigate in their

home district, but the burden of litigating on an opposite coast is no heavier on Defendants than it

would be on PPC.  Defendants have not presented any evidence of financial or physical hardship

of litigating here, and the law is clear that the plaintiff's choice receives heavy weight.  Further,

because the legal representation at issue in this case occurred not just in W&W's  Philadelphia

offices, but also before a Court in this District, it is likely that both relevant books and records

and most of the witnesses are located here, making this District more convenient.[86]

       The public interests likewise favor venue here.  Defendants contend that California law

---

[83]  Jumara, 55 F.3d at 879 (citations & quotations omitted).

[84]  Id.

[85]  Id. at 879–80.

[86]  See, e.g., Levin, Fishbein, 2009 WL 4857434 at *5 (transfer to Alaska appropriate in fee
dispute where underlying litigation occurred in Alaska).

will govern interpretation of the contract because the contract was executed there, and this Court

should defer to California courts.[87]  However, a transferee court must apply the law the transferor

district would have applied, including the applicable choice-of-law rules.[88]  This Court, sitting in

diversity, applies the choice-of-law provisions of Pennsylvania.[89]  And "Pennsylvania applies the

more flexible, 'interest/contacts' methodology to contract choice-of-law questions," rather than

the rigid rule of lex loci contractus.[90]  In contract cases, Pennsylvania courts consider the

following contacts in determining which state has the greater interest in applying its law: (a) the

place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d)

the location of the subject matter of the contract; and (e) the domicile, residence, nationality,

place of incorporation and place of business of the parties."[91]  Even if California and

Pennsylvania contract law differs,[92] based on these factors, Pennsylvania has a greater interest in

applying its law than does California: not only is W&W a Pennsylvania law firm, the subject

matter of the contract—legal services—was to be performed by W&W in Pennsylvania and in

connection with litigation pending here.  Further, this state has a strong interest in regulating its

---

[87]  Mot. Dismiss ¶ 10.

[88]  Van Dusen v. Barrack, 376 U.S. 612, 639 (1964); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (the rule of Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), applies to state choice-of-law provisions).

[89]  Klaxon, 313 U.S. at 496; Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226 (3d Cir. 2007).

[90]  Hammersmith, 480 F.3d at 226–27.

[91]  Photomedex, Inc. v. St. Paul Fire & Marine Ins. Co., No. 07-0035, 2008 WL 324025, at *14 (E.D. Pa. Feb. 6, 2008) (citing Restatement (Second) of Conflict of Laws § 188(2)).

[92]  If the laws do not differ, there is no need for any choice of law analysis.  Hammersmith, 480 F.3d at 230.  Defendants have not argued that California law governing contract interpretation differs from Pennsylvania's, and at least one court in this District has found that it does not.  Venor Grp. v. Isis Pharm., No. 07-2079, 2007 WL 3355610, at *2 (E.D. Pa. Nov. 9, 2007).

legal profession.  Beyond their California residences, Defendants have identified no interest California may have in this dispute.[93]  Accordingly, Pennsylvania law applies[94] and venue is more appropriate in this District given its experience with Pennsylvania law.  The Court thus declines to transfer this case.

### C.    Failure to State a Claim & Failure to Join a Party Under Rule 19

Defendants appear to argue the Complaint must be dismissed because: (1) under Rule 12(b)(6), PPC has "no claim against Defendants" because the assignment is invalid; (2) PPC therefore lacks standing to bring the claim; and (3) under Rule 12(b)(7), W&W is a party required by Rule 19 to be joined to this action.[95]  Though Defendants' motion invokes Rule 12(b)(6), because Defendants do not challenge the sufficiency of the Complaint's factual allegations in supporting PPC's breach of contract and other claims, but instead assert that PPC is not the proper party to bring those claims in this Court, the Court treats Defendants' motion as

---

[93]  Defendants assert that the Engagement Agreement, addressed to Defendants' attorney's Utah address, was signed in California. Mot. Dismiss ¶ 7. But the Agreement does not indicate where it was signed, and Defendants did not submit, as they could have for venue purposes, an affidavit supporting their assertions. The Court therefore has no basis to conclude the contract was executed in California. Even if California were the place of contracting, that would not change this Court's conclusion that Pennsylvania law applies here. O'Brien v. Pennington Sch., No. 06-2101, 2008 WL 160588, at *6 (E.D. Pa. Jan. 14, 2008) ("[S]tanding alone, the place of contracting is a relatively insignificant factor.") (quotations & citation omitted).

[94]  See O'Brien, 2008 WL 160588, at *6 (E.D. Pa. Jan. 14, 2008) (under Pennsylvania choice of law analysis, New Jersey law applies to breach of contract case where educational services at the core of the contract dispute were to be performed in New Jersey though contract was executed in Pennsylvania and plaintiffs were Pennsylvania residents).

[95]  Mot. Dismiss ¶¶ 17,19, 21, 25(2), 28; Defs.' Reply to Pl.'s Mem. of Law Responding to Defs.' Mot. Dismiss Compl. ("Reply") at 1–2.

Defendants' Motion to Dismiss includes "paragraph 25" twice.  The Court refers to the first such paragraph as "25(1)" and the second as "25(2)."

seeking dismissal for lack of subject matter jurisdiction rather for failure to state a claim.[96]

Defendants assert that W&W's assignment of its claims to PPC is invalid because: (1) it was not supported by consideration; (2) and Defendants did not expressly consent to assignment in the Engagement Agreement with W&W; and (3) PPC is owned, at least in part, by some lawyers at W&W and the assignment is motivated to shield the action from the public and malpractice insurers. The Court disagrees. First, even if the assignment lacked consideration, it is nonetheless valid.[97] Pennsylvania law, which governs the validity of W&W's assignment to PPC,[98] does not require assignments be supported by consideration so long as they evince an intent of the parties to be legally bound by it.[99] The Assignment Agreement clearly evinces

---

[96] Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006) ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims . . . .").

[97] Consequently, the Court need not determine whether Defendants make a facial or factual standing challenge. Either way, a determination that the assignment is valid answers the jurisdictional question.

[98] The Assignment Agreement established that it is "governed and interpreted in accordance with Pennsylvania law." Compl. Ex. C ("Assignment Agreement") ¶ 5. Thus, regardless of whether Pennsylvania or California law otherwise applies in this action, each state would give effect to the choice of law clause. Medlar v. Regence Grp., No. 04-2762, 2005 WL 1241881, at *4 (E.D. Pa. May 23, 2005); Nedlloyd Lines B.V. v. Sup. Ct., 834 P.2d 1148, 1149 (Cal. 1992).

[99] See, e.g., Kia v. Imaging Sciences Int'l, Inc., -- F. Supp. 2d --, 2010 WL 3322696, at *5 (E.D. Pa. 2010); Silver v. Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, No. 03-4393, 2004 WL 1699269, at *2 (E.D. Pa. July 28, 2004); Huff v. Nationwide Ins. Co., 167 B.R. 53, 60 (W.D. Pa. 1992); Brager v. Blum, 49 B.R. 626, 629 (E.D. Pa. 1985); Ertel v. McCloskey, 74 A.2d 652, 654 (Pa. Super. Ct. 1950).

Case law cited by Defendants is not to the contrary: one case merely restates the general rule that consideration is required to support an *irrevocable* assignment, see Estate of Norman A. Helfant Litig. v. Capital Mgmt. Grp., Inc., No. 99-6642, 2000 WL 1522857, at *9–10 (E.D. Pa. Oct. 13, 2000), and the other applies Maryland law, First Nat'l of Md. v. Phila. Nat'l Bank, No. 87-2829, 1989 WL 79789, at *2–3 (E.D. Pa. July 10, 1989).

-20-

W&W's intent to be so bound.[100]  Consequently, the assignment is valid even without

consideration. Moreover, even if consideration were required here, the face of the agreement

clearly states that the assignment was made "for good and valuable consideration."[101]  And at

least one form of consideration is apparent from the face of the agreement: PPC's "assumption . .

. of the time and burden of bringing the claim, as well as the risk of loss should the claim be

unsuccessful."[102]  Second, contrary to Defendant's suggestion,[103] the absence of an express

provision in the underlying Engagement Agreement authorizing assignment does not invalidate

an otherwise valid assignment.  The reverse is true: "[a]bsent an express provision *against*

assignment, the rights and duties under an executory bilateral contract which does not involve

personal skill, trust, or confidence may be assigned without the consent of the other party so long

as it does not materially alter the other party's duties and responsibilities."[104]  Here, Defendants'

unperformed obligations—payment of fees—does not involve personal skill, trust or confidence

and thus may be assigned absent a prohibition in the Engagement Agreement.  Therefore, the

assignment valid and PPC has standing to pursue the assigned claims.[105]

---

[100]  Assignment Agreement at 1 ("W&W, intending to be legally bound hereby, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged . . .").

[101]  See Pl.'s Resp. at 8; Assignment Agreement.  The Court may consider the Assignment Agreement because it was attached to the Complaint as an exhibit.  See Fed. R. Civ. P. 10(c).

[102]  Id. at *4.

[103]  Mot. Dismiss ¶ 19.

[104]  Smith v. Cumberland Grp., Ltd., 687 A.2d 1167, 1172 (Pa. Super. Ct. 1997) (emphasis added) (citing *inter alia* Walker v. Mason, 116 A. 305, 306 (Pa. 1922).

[105]  Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 285–86 (2008) (assignees have Article III standing).

Equally unavailing are Defendants arguments that the assignment is invalid because: (1) W&W is merely assigning the agreement to itself since PPC is owned in part or whole by W&W attorneys; (2) W&W assigned its claim to shield its collection efforts from the public and malpractice insurers; and (3) assignment of legal fees in such a manner is against public policy.[106] First, Defendants ignore the strong presumption of corporate separateness under Pennsylvania law, and present neither facts nor law sufficient to disregard the presumption as to W&W and PPC.[107] Second, under Pennsylvania law, if an assignment is valid, the motivation underlying the assignment is irrelevant.[108] Third, Pennsylvania permits creditors to assign debt to collection agencies,[109] and permits assignment of claims for attorneys' fees so long as there is a clear agreement to do so between the parties to the assignment.[110] Here, the Assignment Agreement expressly warranted the amount of accounts receivable owed by Defendants and assigned to PPC,

[106] Mot. Dismiss ¶¶ 14–16, 18, 23–25; Reply at 2–3 (noting that W&W is merely assigning case to itself and that lack of cases in which firms assigned rights to fees indicates such assignment is invalid).

[107] See, e.g., In re Blatstein, 192 F.3d 88, 100 (3d Cir. 1999) (noting factors required to disregard separate corporate status include failure to observe corporate formalities, non-payment of dividends, insolvency of the debtor corporation, siphoning funds of the corporation, non-functioning of other officers or directors, lack of corporate records, and acting as a mere facade for the operations of the dominant stockholder or stockholders).

Here, Defendants assert only that PPC "consists of lawyers from W&W itself" because: PPC's signatory to the Assignment Agreement is also an attorney with W&W; W&W is representing PPC in this action; and both firms are co-located. Mot. Dismiss ¶¶ 14–16. Those facts are insufficient for this Court to disregard the undisputed separate legal status of PPC and W&W.

[108] Ertel, 74 A.2d at 654.

[109] 18 Pa. C.S.A. § 7311 (permitting assignment to collection agency if the assignment is in writing, the original agreement between the creditor and debtor does not prohibit assignments, and the collection agency complies with Pennsylvania's Unfair Trade Practices and Consumer Protection Law).

[110] See 26 E. Oregon Ave. LP v. Fidelity Nat. Title Ins. Co., No. 002383, 2004 WL 2474063, at *4 (Pa. Com. Pl. Sept. 18, 2004) (no express agreement to assign attorneys' fees where assignment mentioned assignment of some attorneys fees, but not those at issue).

which is identical to the amount of attorneys fees alleged to be owed here.[111]  This Court finds

such an express statement sufficient to demonstrate a clear agreement between PPC and W&W

to include claims for attorneys' fees in the assignment. Moreover, as a matter of policy, this

Court sees no reason why a law firm, like any other creditor, should not be free to assign

delinquent debt to collection agencies, much less why law firms should be discouraged from

assigning debt to collection entities they wholly own, since doing so may better protect

confidential information of former clients, at least up to the point of filing.  Accordingly, the

Court finds no reason to invalidate a presumptively valid assignment.

    Finally, Defendants' invocation of Rule 12(b)(7) for PPC's failure to join W&W is

misplaced.  Under Rule 19(a) of the Federal Rules of Civil Procedure, joinder is required of any

person: (1) without whom the court cannot accord complete relief among the existing parties; or

(2) who retains an interest in the subject matter of the action and cannot adequately protect that

interest without being joined.[112]  Dismissal is a permissible remedy only if the required party

cannot be joined because either they cannot be served or joinder will destroy subject matter

jurisdiction.[113]  Thus even if W&W were a required party, dismissal would be unwarranted

because W&W is a Pennsylvania citizen and its joinder would not defeat jurisdiction.[114]  Second,

---

[111]  Assignment Agreement ¶¶ 1–2.

[112]  Fed. R. Civ. P. 19(a)(1)(A) & (B).

[113]  Id.; see also Develcom Funding, LLC v. Am. Atl. Co., No. 09-1839, 2009 WL 2923064, at *2 (D.N.J. Sept. 9, 2009).

[114]  See Fed. R. Civ. P. 19(a); see also Robbins Motor Transp., Inc. v. 24/7 Transp. Specialists, Inc., No. 03-1038, 2004 WL 438650, at *4 (E.D. Pa. Mar. 8, 2004).

W&W does not have any interest in the claims here and is therefore not a required party.[115]

Under Pennsylvania law, a valid assignment divests the assignor of its interest unless the

assignment is partial.[116] And an assignment is not partial where "the language of the assignment

is clear that . . . [the assignor] does not retain any rights to bring claims against Defendants."[117]

Here, the agreement unequivocally states that "W&W hereby sells, assigns, transfers, and

conveys unto PPC *all* of W&W's right, title, interest and ownership of any nature whatsoever, in,

to or under any Claims which W&W has or may have against [Defendants]."[118] Thus, W&W

maintains no interest in the claims,[119] and Rule 19 is inapplicable.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is denied. An appropriate

Order follows.

---

[115] Defendants do not argue that without W&W, this Court cannot provide complete relief to the parties under Rule 19(a)(1)(A).

[116] See Silver, 2004 WL 1699269 at *2 (citing *inter alia* Gardner v. Surnamer, 608 F. Supp. 1385, 1391 n.4 (E.D. Pa. 1985)).

[117] See id.

[118] Assignment Agreement ¶ 1 (emphasis added).

[119] See Silver, 2004 WL 1699269 at *4.